UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DWIGHT YOUNG,                                          Case No. 09-CV-1223 (PJS/SRN)

               Plaintiff,

v.

KYLE KLASS, in his individual capacity and
as an employee or agent of Block E Hotel
Capital, LLC and/or Gameworks; BLOCK E
HOTEL CAPITAL, LLC; SEGA                               ORDER ON THE MOTION
ENTERTAINMENT U.S.A., INC., d/b/a                      FOR SUMMARY JUDGMENT OF
Gameworks; SECUREFORCE, LLC; CITY                      DEFENDANTS KYLE KLASS AND
OF MINNEAPOLIS; CLARK GOSET, in his                    SECUREFORCE, LLC
individual capacity as a Minneapolis police
officer; JER YANG, in his individual
capacity as a Minneapolis police officer;
DALE BURNS, in his individual capacity as
a Minneapolis police officer; SERGEANT
SWALVE, in his individual capacity as a
Minneapolis police officer; and OFFICER J.
WILL, in his individual capacity as a
Minneapolis police officer,

               Defendants.

Peter J. Nickitas, PETER J. NICKITAS LAW OFFICE, LLC; Ted Dooley, TED
DOOLEY LAW OFFICE, LLC, for plaintiff.

Louise A. Behrendt and Michael S. Kreidler, STICH, ANGELL, KREIDLER, DODGE &
UNKE, P.A., for defendants Kyle Klass and SecureForce, LLC.

In May 2007, plaintiff Dwight Young was instructed to leave the Gameworks arcade in

downtown Minneapolis by defendant Kyle Klass, a security guard working at the arcade. Young

complied. A few minutes later, Young was arrested on the sidewalk outside of Gameworks by

two Minneapolis police officers, defendants Clark Goset and Jer Yang. Young alleges that Goset

and Yang acted on the basis of false information provided by Klass. In the course of the arrest,

defendant Joseph Will, another Minneapolis police officer, applied a taser to Young's back.
After being arrested, Young was taken to jail by Goset and Yang.

Based on these events, Young brought a total of 12 claims against 10 defendants: Klass;
Klass's employer, SecureForce, LLC; officers Goset, Yang, and Will, as well as two police
sergeants, Daniel A. Swalve and Dale Burns; the City of Minneapolis; Sega Entertainment
U.S.A., Inc., the owner of the arcade; and Block E Hotel Capital, LLC, the owner of the complex
known as "Block E" that housed the arcade.

All defendants except Block E Hotel Capital, LLC (which has not appeared) moved for
summary judgment.  In an order dated October 1, 2010 [Docket No. 74], the Court ruled on most
of the motions, dismissing all claims against four defendants (Sega Entertainment U.S.A., Inc.,
the City of Minneapolis, Burns, and Swalve) and dismissing all state-law claims against Goset,
Yang, and Will.  Young's federal claims against Goset, Yang, and Will remain pending.

In this order, the Court addresses the summary-judgment motion of Klass and
SecureForce, against whom Young asserts state-law claims for malicious prosecution, abuse of
process, false imprisonment, and negligence.  Because Young alleges that SecureForce is
vicariously liable for Klass's actions — and does not allege that SecureForce committed any
independent torts — the summary-judgment arguments of SecureForce and Klass are the same.
Accordingly, for ease of exposition, the Court refers only to Klass in discussing Young's claims.

For the reasons that follow, the Court denies summary judgment with respect to Young's
malicious-prosecution and false-imprisonment claims; grants summary judgment with respect to
Young's abuse-of-process claim; and grants in part and denies in part summary judgment with
respect to Young's negligence claim.

-2-

I.  BACKGROUND

*A.  Introduction*

The parties agree on this rough outline of events:  On May 10, 2007, at about 10:00 p.m., Young entered Gameworks, an arcade located in Block E in downtown Minneapolis, and talked to some customers.  Klass asked Young to leave, and Young complied.  Although Young left the premises, he remained on the sidewalk outside of Gameworks.  Klass came out and asked Young to leave, but Young refused.

Two Minneapolis police officers, Goset and Yang, arrived on the scene.  Either before or after the officers arrived, someone handcuffed Young.  A third officer, Will, applied a taser to Young's back, and Young was placed in Goset and Yang's squad car.  Goset and Yang took Young to the Hennepin County jail where he was held for disorderly conduct and trespassing. Sautter Decl. (Second) Ex. 17 at 3 [Docket No. 69-1].  After spending the night in jail, Young pleaded not guilty and was released.  Register of Actions, *State v. Young*, No. 27-CR-07-030590 (Hennepin Criminal Downtown).[1]  The charges against Young were dropped a few months later. *Id.*

As for the details of the evening's events, however, Young, Klass, and the various police officers all tell very different stories.  Because defendants move for summary judgment, the Court must construe the evidence in Young's favor.  In an ordinary case, construing the evidence in the plaintiff's favor means taking the plaintiff's version of events as true.  This is an unusual

---

[1]The docket ("Register of Actions") for Young's criminal case is found in slightly different forms at two places in the record: (1) attached to the Boggs Affidavit [Docket No. 52] as Exhibit 16 [Docket No. 53-15], and (2) attached to the Nickitas Declaration [Docket No. 62] as Exhibit 1 [Docket No. 62-1].

case, however, in that Young's version of events is in some respects *less* favorable to his own

cause than defendants' versions.

At oral argument, Young conceded that his claims must stand or fall based on his version

of events, even if that version is less favorable than a defendant's version. The Court therefore

relies primarily on Young's version of events. When other evidence does not contradict Young's

version, the Court construes that evidence in the light most favorable to Young.

*B. Facts*

Young's version of events — supplemented by other evidence that does not contradict

Young's version — is as follows:

While walking past Gameworks on the evening of May 10, 2007, Young decided to go in

to play pool. Young Dep. at 21, 75.[2] Once inside, Young asked a man who was playing pool

whether he wanted to play a game with Young. *Id.* at 25, 75-76. The man declined but offered

Young his table. *Id.* at 25. Young then asked a different man if he wanted to play. *Id.* at 25-26.

Before the man answered, Klass tapped Young on the shoulder and told him to leave. *Id.* at 26,

76-77. Young immediately complied. *Id.* at 26-27, 78.

Young walked out of the second-floor entrance to Gameworks and into a common area

within Block E, took an escalator down to the ground level of the complex, and exited onto the

sidewalk. *Id.* at 26-28, 78. Klass followed Young the entire way.[3] *Id.* at 27-29, 78-79, 103-04.

---

[2]Young's complete deposition transcript is attached to the Boggs Affidavit as Exhibit 1 [Docket No. 53] and to the Nickitas Declaration as Exhibit 5 [Docket No. 62-5]. Excerpts of Young's deposition transcript are attached to the Behrendt Affidavit [Docket No. 47] as Exhibit A [Docket No. 47-1].

[3]Klass denies having followed Young into the Block E common area, down the escalator, (continued...)

As Young was walking along the sidewalk toward a bus stop, he turned to Klass and asked why Klass was still following him.  Klass responded that he was making sure that Young got off the block and (according to Young) "took [his] ass home."  Young replied that Klass was "full of shit" and was harassing him.  *Id.* at 29-30, 79.

Klass then waved at a nearby police car and gestured for the officers to come over.  *Id.* at 29-30, 79-80.  Goset and Yang pulled over, got out of the car, and walked directly up to Young; either Goset or Yang then handcuffed Young.  *Id.* at 29-32, 105-07.  The officers placed the handcuffed Young up against the side of their squad car and pat searched him.  *Id.* at 32-33, 81.

Klass never put his hands on Young, *id.* at 80, 107-08, but at some point, Klass had a conversation with Goset, Goset Dep. at 29, 33, 53.[4]  Klass told Goset that Young had been trespassing and acting disorderly inside Gameworks.  Goset Dep. at 32-33, 45-46, 56-61; Boggs

---

[3](...continued)
and out of Block E.  Instead, Klass says that he remained within Gameworks, used an internal staircase to descend to the ground floor of Gameworks, walked out of the street-level entrance to Gameworks, and then encountered Young on the sidewalk.  Klass Dep. at 62 ("I did not follow [Young] outside.  He left through the skyway upstairs entrance.  I went through Gameworks and then out the lower entrance.")  Surveillance video, however, shows that — precisely as Young says — Klass exited Block E through the same door as Young and followed Young along the sidewalk.  Nickitas Decl. Ex. 3 (DVD 2), "Hennepin Ave." camera view, from 22:30:07 to 22:30:40.

Klass's complete deposition transcript is attached to the Boggs Affidavit as Exhibit 2 [Docket No. 53-1] and to the Nickitas Declaration as Exhibit 8 [Docket Nos. 62-8 to 62-11].  Excerpts of Klass's deposition transcript are attached to the Behrendt Affidavit as Exhibit C [Docket No. 47-2 at 8-27].

[4]Goset's complete deposition transcript is attached to the Boggs Affidavit as Exhibit 7 [Docket No. 53-6] and to the Nickitas Declaration as Exhibit 11 [Docket Nos. 62-15 to 62-18].  Excerpts of Goset's deposition transcript are attached to the Behrendt Affidavit as Exhibit F [Docket No. 47-3 at 5-11].

Aff. Ex. 11 [Docket No. 53-10]; Klass Dep. at 76.  Klass also told Goset that he suspected Young

of being drunk and had asked Young to leave Gameworks because Young was bothering patrons.

Goset Dep. at 59-60.

While Young was leaning against the squad car in handcuffs, he twice asked why he was

being arrested and was twice told to shut up.  Young Dep. at 34-35, 47.  Young said that he

would not shut up and needed to know why he was being arrested.  *Id.* at 34-35.  Young was

calm and was not resisting the officers.  Young Dep. at 105, 114.

At some earlier point, Will and his partner had approached the scene while on foot patrol

in the area.  Will Dep. at 84-87.[5]  After Young refused to shut up and asked for a third time why

he was being arrested, Will applied his taser to Young's back.  Young Dep. at 34-36; *see* Will

Dep. at 96.  According to Young:

> Once I realized I had been tased, I turned around and asked the
> officer that did that, that they had to be kidding, they tased me
> because I wanted to know why I was being arrested.
>
> And the officer said, "Yeah, that's why we tased you.  Now
> shut up and get in the car."

Young Dep. at 36.  When Young turned around, the police officers twisted his arms to force him

to face the squad car.  *Id.* at 38-39.  Young started yelling at nearby pedestrians to get their

attention, shouting, "You all seeing what they're doing to me?"  *Id.* at 37, 50-51; *see also* Goset

Dep. at 42.  The police officers then eased off of Young.  Young Dep. at 37-38.  One of the

officers opened the squad car's rear door and pushed Young inside.  *Id.* at 36-39, 51.

---

[5]Will's complete deposition transcript is attached to the Boggs Affidavit as Exhibit 8
[Docket No. 53-7] and to the Nickitas Declaration as Exhibit 15 [Docket Nos. 62-26 to 62-30].
Excerpts of Will's deposition transcript are attached to the Behrendt Affidavit as Exhibit G
[Docket No. 47-3 at 12-13].

Goset and Yang drove Young to the Hennepin County jail.  Goset Dep. at 43.

Meanwhile, Klass prepared a "trespass notice form" banning Young from Block E for a year for

"disorderly conduct" at Gameworks.  Klass Dep. at 88-89; Boggs Aff. Ex. 4 [Docket No. 53-3].

The notice form has a signature line for the recipient.  Boggs Aff. Ex. 4.  On that line, Klass

wrote "handcuffed," which implies that Klass showed the notice to Young but Young could not

sign because he was in handcuffs.  *Id.; see* Klass Dep. at 90.  In fact, though, Klass prepared the

notice after Young had been taken to jail by Goset and Yang; Young was not shown the notice.

Klass Dep. at 90-91.

Young was held overnight in the Hennepin County jail and informed the next morning

that he was being charged with disorderly conduct and trespassing.  Young Dep. at 40.  The

charges were brought in the form of a "tab charge."  *See* Register of Actions, *State v. Young*, No.

27-CR-07-030590 (Hennepin Criminal Downtown).  A "tab charge" is "a brief statement of the

charge entered in the record by the court administrator that includes a reference to the statute,

rule, regulation, ordinance, or other provision of law the defendant is alleged to have violated."

Minn. R. Crim. P. 1.04(c).  In other words, a tab charge is a substitute for a criminal complaint or

a citation, and it is prepared by a court administrator — not by a prosecutor or a police officer —

on the basis of a police report.[6]

---

[6]*See* Minn. R. Crim. P. 1.04(c) ("A tab charge is not synonymous with 'citation' as
defined by [Minn. R. Crim. P.] 6.01."); Minn. R. Crim. P. 4.02 subd. 5(3) ("If no complaint is
filed by the time of the defendant's first appearance in court as required by this rule for a
misdemeanor charge . . . the court administrator must enter upon the records a tab charge . . . .");
8 Henry W. McCarr & Jack S. Nordby, *Minn. Prac., Criminal Law & Procedure* § 11.1 (3d. ed
2010); *see generally* Evan C. Tsai, *Tab Charging: Defining the Problem and Proposing
Solutions* (Minn. Justice Found. Legal Scholarship for Equal Justice Project, Student Paper, Dec.
20, 2006), *available at* http://www.lsej.org (follow "Completed Works" hyperlink, then follow
(continued...)

Young was released that day after pleading not guilty.  The charges were dismissed on August 22, 2007.  *See* Register of Actions, *State v. Young*, No. 27-CR-07-030590 (Hennepin Criminal Downtown).  Young brought this action in May 2009.

## II.  DISCUSSION

### *A.  Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

### *B.  Young's Claims Against Klass*

#### 1.  Malicious Prosecution

Under Minnesota law, the tort of malicious prosecution includes four elements.  The plaintiff must prove that: (1) the defendant initiated criminal proceedings (2) without probable cause and (3) with malice, and (4) the proceedings terminated in the plaintiff's favor.  *See Cox v. Lauritsen*, 147 N.W. 1093, 1094 (Minn. 1914) ("In order to maintain [a malicious-prosecution] action, plaintiff must show that the prosecution was instituted at the instigation of the defendants, without probable cause, and maliciously."); *Jordan v. Lamb*, 392 N.W.2d 607, 609 (Minn. Ct.

---

[6](...continued)
hyperlink for title of paper).

App. 1986); *see also* Restatement (Second) of Torts § 653 (1977); *Stead-Bowers v. Langley*, 636

N.W.2d 334, 339-40 (Minn. Ct. App. 2001) (discussing Restatement (Second) of Torts §§ 653-

54).

There is no dispute as to the fourth element — namely, that the criminal proceedings

against Young terminated in his favor.  But Klass contends that Young cannot establish the first

element because Klass did not initiate the criminal proceedings against Young; instead, Klass

says, those proceedings were initiated by the police.  Klass Mem. Supp. Mot. S.J. ("Klass SJ

Mem.") at 23 [Docket No. 46].  Klass also contends that Young cannot establish the third

element because no reasonable jury could find that Klass acted with malice.  *Id.*  Klass is

mistaken on both points.

If Young is to be believed, Klass signaled for police assistance when no such assistance

was needed.  More important, the charges brought by the police were based primarily on false

information provided by Klass.  Goset testified that the trespassing charge was based entirely on

what Klass told him.  Goset Dep. at 56-57, 59.  Goset further testified that the disorderly-conduct

charge was based on two things: information that Klass provided about Young's behavior inside

Gameworks, and what Goset observed on the street.  Goset Dep. at 59-60.  A reasonable jury

could therefore conclude (again, if Young is to be believed) that the police brought charges

against Young because Klass falsely told police that Young had been trespassing and acting

disorderly inside Gameworks.

Klass tries to sidestep the question of whether he provided false information to the police.

According to Klass, he cannot be found to have initiated proceedings against Young unless "law

enforcement personnel were so controlled by Klass that they failed to exercise independent

judgment." Klass SJ Mem. at 23. To support this proposition, Klass relies on *Dunham v. Roer*, 708 N.W.2d 552 (Minn. Ct. App. 2006), a decision of the Minnesota Court of Appeals on which those defending malicious-prosecution claims often rely.

It is true that *Dunham*, in upholding a district court's dismissal of a malicious-prosecution claim, said that the plaintiff "did not produce evidence that the prosecutor was controlled by [the defendant] and failed to exercise independent discretion." *Id.* at 570. But this particular statement did not purport to set forth a rule that in *every* malicious-prosecution case, a plaintiff must show that the defendant "controlled" the party who brought the charges. Rather, the statement was addressed to the plaintiff's specific argument that the defendant "improperly persuaded the city prosecutor to file criminal charges . . . ." *Id.* Put another way, the plaintiff in *Dunham* did not argue that the defendant initiated criminal proceedings by *lying* to the prosecutor; rather, the plaintiff argued that the defendant did so by *pressuring* the prosecutor. It made perfect sense for the court, in rejecting that particular argument, to note that the plaintiff failed to show that the defendant controlled the prosecutor.

Here, though, Young does not claim that Klass improperly pressured the police or a prosecutor to file criminal charges. Rather, Young alleges that Klass lied to the police — and, based on those lies, the police arrested Young. *Dunham* does nothing to disturb a long line of authority holding that a defendant can be held liable for malicious prosecution if the plaintiff was charged with a crime because of the defendant's lies.

This rule was clearly set forth in *Jones v. Flaherty*, in which a jury found a defendant liable for malicious prosecution. 165 N.W. 963 (Minn. 1917). In *Jones*, a landlord told a city prosecutor that a tenant had destroyed property before moving out. *Id.* at 964. Based on the

landlord's report, the prosecutor "prepared a complaint on a charge of malicious destruction of property, had [the landlord] sign it and caused a warrant to issue." *Id.* *Jones* said that, as a general rule, a defendant cannot be liable for malicious prosecution if he makes "a full and fair statement of all facts known to him" and then is advised by a lawyer (in particular, a prosecutor) "that prosecution will lie and he acts in good faith upon that advice . . . ." *Id.* But in *Jones*, despite the prosecutor's advice and preparation of the complaint, the court upheld the jury verdict because "[t]he verdict of the jury amount[ed] to a finding that [the landlord] did not make a full and fair statement to the city prosecutor." *Id.*

The commentary to Restatement (Second) of Torts § 653 likewise reflects the commonsense notion that when one person is criminally prosecuted because of another person's lies, then even if it was a prosecutor (or, as in this case, a police officer) who initiated the criminal proceedings as a formal matter, the person who lied can be found to have initiated those proceedings for purposes of a malicious-prosecution claim. Comment g to § 653, "Influencing a public prosecutor," provides:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. . . .
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated . . . was the determining factor in the official's

> decision to commence the prosecution, *or that the information furnished by him upon which the official acted was known to be false*.

Restatement (Second) of Torts § 653 cmt. g (1977) (emphasis added).  Minnesota courts appear to follow § 653,[7] and multiple state- and federal-court decisions have acknowledged, explicitly or implicitly, the principle that when someone tells lies to a prosecutor and those lies result in criminal charges, the liar is responsible for initiating criminal proceedings.[8]

The evidence, viewed in the light most favorable to Young, shows that the police charged Young with trespassing and disorderly conduct based in whole or in part on Klass's false statements about Young's conduct inside Gameworks.  A reasonable jury could therefore find that Klass initiated criminal proceedings against Young.

_____

[7]*See Stead-Bowers*, 636 N.W.2d at 339-40 (discussing Restatement (Second) of Torts §§ 653-54).

[8]*Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979) ("The tort of malicious prosecution is triggered by institution of criminal proceedings, in this case the return of a grand jury indictment. . . . *[A]bsent any specific allegation, such as the presentation of false evidence or the withholding of evidence*, the grand jury indictment breaks any chain of causation linking the employees' activities to the institution of criminal proceedings, thus insulating the F.B.I. and Justice Department employees from tort liability."); *Pratt v. Kilborn Motors, Inc.*, 363 N.E.2d 452, 454-55 (Ill. Ct. App. 1977) (adopting Restatement of Torts § 653 cmt. g (1938), which is substantively the same as Restatement (Second) of Torts § 653 cmt. g (1977)); *Survis v. A.Y. McDonald Mfg. Co.*, 28 N.W.2d 720, 728-29 (Minn. 1947) ("It is a well established rule in this state that where a person *states fully and fairly* to an attorney all the facts known to him and is advised that such facts warrant a criminal prosecution, and, acting in good faith in reliance on such advice, he institutes a prosecution, he has a complete defense to an action for malicious prosecution." (emphasis added; quotation marks omitted)); *Cole v. Andrews*, 76 N.W. 962, 963 (Minn. 1898) ("Where one in good faith merely makes to a committing magistrate, or to a grand jury, a *full and truthful statement* of the facts as they actually existed, and the magistrate or grand jury erroneously believes the facts constitute a crime, and issues a warrant of arrest or finds an indictment accordingly, he is not liable in damages to a party arrested or indicted; because, in such case, he cannot be said to have instituted or instigated the prosecution, for the oppression of the plaintiff would be attributable alone to the erroneous legal conclusions of the county attorney or grand jury." (emphasis added)).

-12-

A reasonable jury could also find that Klass acted with malice toward Young based on a combination of three circumstances:  First, a jury could find that Klass lied to police about Young's behavior inside Gameworks.  Second, a jury could find that Klass flagged down a police car for assistance with Young when Young was on a public sidewalk doing nothing unlawful.  Third, a jury could find — based on videotaped evidence — that Klass followed Young out of Block E even though Young complied with Klass's direction to leave Gameworks, and that Klass later lied under oath about having followed Young.  *Cf. Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 644 (Minn. 1978) (holding that bringing criminal charges against a defendant despite evidence tending to show that the defendant was innocent was "sufficient to show both lack of probable cause and malice").

For these reasons, Klass's motion for summary judgment on Young's malicious-prosecution claim will be denied.

### 2.  Abuse of Process

Under Minnesota law:

> The essential elements of an action for abuse of process are only two, namely, (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not.  The gist of the action is the misuse or misapplication of the process, *after it has once been issued*, for an end other than that which it was designed to accomplish.

*Hoppe v. Klapperich*, 28 N.W.2d 780, 786 (Minn. 1947) (emphasis in original); *see also Dunham*, 708 N.W.2d at 571.

The Court agrees with Klass that a reasonable jury could not find him liable for abuse of process.  Young does not allege that Klass secured some process and then, after that process had

been secured, used it in an improper way.  Rather, the "process" at the heart of this case is simply Young's arrest and subsequent tab charge for disorderly conduct and trespassing.  If that "process" was improperly *instigated* by Klass, then (as discussed above) Klass may be liable for malicious prosecution.  But the facts do not support a separate claim that Klass abused that process *after* it was issued.  The Court will grant Klass's motion for summary judgment on Young's claim for abuse of process.

### 3.  False Imprisonment

According to Young, Goset and Yang arrested him immediately after Klass flagged down their squad car.  Young was then imprisoned overnight in the Hennepin County jail.  Young does not bring a false-arrest claim against Klass, but he does bring a claim for false imprisonment.  False imprisonment is "any imprisonment which is not legally justifiable."  *Kleidon v. Glascock*, 10 N.W.2d 394, 397 (Minn. 1943) (quotation marks omitted).

Klass does not dispute that Young was imprisoned, and Klass does not dispute (solely for purposes of his summary-judgment motion) that Young's imprisonment was unlawful.  Instead, Klass argues that he is not liable for false imprisonment because there is no evidence that he caused the imprisonment.  Klass SJ Mem. at 17-19.

Minnesota law is unclear on what a plaintiff must show to establish causation with respect to the tort of false imprisonment.  Klass asks this Court to follow *Smits v. Wal-Mart Stores, Inc.*, a decision of the Minnesota Court of Appeals.  525 N.W.2d 554 (Minn. Ct. App. 1994).  According to *Smits*, when a false-imprisonment claim is based on an arrest by the police, "[u]nless a person's conduct rises to the level of instructing the police to arrest a person, no liability can be imposed."  *Id.* at 558.  Put another way, according to *Smits*, "[a] party is not liable

for false imprisonment for conveying information about suspected criminal activity unless that

party *directly persuades or commands* the police to detain the suspect." *Id.* (emphasis added).

To support this statement, *Smits* cited comment c to Restatement (Second) of Torts § 45A

(1965). *Smits* then cited one Minnesota case, *Ward v. National Car Rental System*, 290 N.W.2d

441, 442 (Minn. 1980), for indirect support of the formulation of the law found in comment c.

      *Ward* was indeed a case in which a defendant who had explicitly requested that the police

take custody of the plaintiff was found liable for false imprisonment. But *Ward* did not say that

such an explicit request was a *necessary* element of the plaintiff's claim. 290 N.W.2d at 442-43.

Instead, *Ward* held that the evidence supported, among other things, the finding that "the

[plaintiff's] imprisonment was *instigated by* defendant . . . ." *Id.* at 442 (emphasis added).

      As *Ward* illustrates, Minnesota law clearly requires that a plaintiff show that a defendant

"instigated" the plaintiff's imprisonment. But what "instigate" means is not spelled out in any

decision of the Minnesota Supreme Court, and the leap in *Smits* from "instigating" an arrest to

"instructing the police" to arrest is based solely on comment c to Restatement (Second) of Torts

§ 45A.

      Perhaps the Minnesota Supreme Court would adopt the view set forth in that comment, as

*Smits* did. But in *Anderson v. Averbeck*, the Minnesota Supreme Court took a much broader

view of causation in a false-imprisonment case, holding that "[a]ll those who by direct act or

indirect procurement personally participate in or proximately cause the false imprisonment or

unlawful detention are joint tortfeasors." 248 N.W. 719, 720 (Minn. 1933). The Minnesota

Supreme Court reaffirmed this legal standard ten years later in *Kleidon*, 10 N.W.2d at 397

(quoting *Anderson*), and *Kleidon* remains good law. *See, e.g., Graham v. Indep. Sch. Dist. 625*,

-15-

No. A05-201, 2005 Minn. App. Unpub. LEXIS 527, 2005 WL 3159742 (Minn. Ct. App. Nov. 29, 2005) (citing *Kleidon*).  The Court has found no decision suggesting that the Minnesota Supreme Court — as distinct from a panel of the Minnesota Court of Appeals — would endorse the narrow standard for "instigation" found in *Smits* and in comment c to Restatement (Second) of Torts § 45A.

If it accepts Young's version of events, a reasonable jury could find that Klass personally participated in or proximately caused Young's false imprisonment by, first, flagging down the police despite knowing that Young had committed no crime, and second, falsely telling the police that Young had committed a crime inside of Gameworks.  Accordingly, under *Anderson* and *Kleidon*, a reasonable jury could find Klass liable for false imprisonment.  Klass's motion for summary judgment on Young's false-imprisonment claim will be denied.

### 4.  Negligence

To prevail on his negligence claim against Klass, Young must show four things: (1) a duty owed by Klass to Young; (2) Klass's breach of that duty; and (3) the breach's proximate causation of (4) Young's damages.  *See, e.g.*, *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982).

The Court does not know what duty Young alleges Klass owed to him and does not know how Young alleges Klass breached that duty.  But for purposes of his summary-judgment motion, Klass does not dispute these two elements of Young's negligence claim.  Klass SJ Mem. at 20.  Instead, Klass disputes causation:  He argues that, whatever harm Young may have suffered, Klass did not proximately cause that harm.  *Id.* at 20-21.  The Court agrees in part.

To the extent that Young seeks to recover damages for Will's use of a taser, the Court agrees that no reasonable jury could find that Klass's alleged negligence proximately caused those damages.  According to Young, Will applied a taser to Young — suddenly and without warning — merely because Young asked three times why he was being arrested.  There is no evidence that Klass did anything to encourage Will to use his taser or even that Klass had reason to believe that Will was about to use his taser.  To the contrary, the evidence (taken in the light most favorable to Young) shows that Will's use of his taser would have been entirely unforeseeable to Klass.  Klass is therefore entitled to summary judgment on Young's negligence claim insofar as that claim is based on Will's use of his taser.

To the extent that Young seeks to recover damages for his imprisonment, however, a jury will have to decide whether Klass's negligence proximately caused those damages.  If Klass flagged down police officers and informed them, falsely, that Young had been trespassing and acting disorderly in Gameworks, then Klass should have foreseen the possibility that the police would take Young to jail, and a jury could find that Klass proximately caused Young's damages from his arrest and subsequent imprisonment.

## ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion of defendants Kyle Klass and SecureForce, LLC for summary judgment [Docket No. 44] is GRANTED IN PART and DENIED IN PART.

1.      Defendants' motion is GRANTED as follows:

    a.      Plaintiff Dwight Young's state-law claim against defendants Kyle Klass and SecureForce, LLC for abuse of process (Claim VIII) is DISMISSED WITH PREJUDICE AND ON THE MERITS.

    b.      To the extent that plaintiff Dwight Young's state-law claim against defendants Kyle Klass and SecureForce, LLC for negligence (Claim II) is based on defendant Officer Joseph Will's use of a taser against Young, the claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

2.      Defendants' motion is DENIED in all other respects.


Dated:  March  7 , 2011                    s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge

-18-